Aaron Cronan, OSB 082964
aaron@aaroncronanlaw.com
Cronan Law LLC
4207 Woodstock Blvd #440
Portland, OR 97206
Tel: (503) 482-9210
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| CATALINBREAD LLC, | Case No. 3:18-cv-1795 |
| Plaintiff, | |
| v. | **FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |
| SCOTT MILLER, HOWARD GEE, BORIS LUTSKOVSKY, and MICHAEL ERICKSON | Violations of Defend Trade Secrets Act (18 U.S.C. § 1831 *et seq.)*, Oregon Uniform Trade Secrets Act (O.R.S. § 646.461 *et seq.*),Computer Fraud and Abuse Act (18 U.S.C. § 1030 *et seq.*), Fraud and Conspiracy to Commit Fraud; Intentional Interference with Business Relations; Breach of Contract; Trespass to Chattels; Breach of Fiduciary Duty |
| Defendants. | |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff Catalinbread, by and through its counsel, for its complaint against Defendants Scott Miller, Howard Gee, Boris Lutskovsky and Michael Erickson, hereby alleges as follows:

## INTRODUCTION

1.     This case concerns a calculated and deliberate effort of Defendants, former employees of Plaintiff, to cause economic harm to the company, misappropriate Plaintiff's intellectual property, tangible property, and protected trade secrets, for Defendants' own use and adverse to Plaintiff's interests. Defendants, while still working for Plaintiff, conspired to enter into competition with Plaintiff, using trade secrets and intellectual property rightfully owned by Plaintiff, with the ultimate objective of running Plaintiff out of business and taking all of Plaintiff's business. After Plaintiff became aware of Defendants' actions and demanded that Defendants cease their unlawful activities, Defendants took Plaintiff's physical and electronic property with the intent to permanently deprive Plaintiff. Defendants communicated plans, took steps and actually succeeded in deleting electronic files containing Plaintiff's trade secrets, intellectual property and information critical for the operations of the business. Plaintiff has already suffered injuries and is certain to suffer further injury as the proximate result of Defendants' unlawful conduct.

## PARTIES

2.     Plaintiff Catalinbread LLC is a limited liability company, organized and existing under Oregon law, with its principal place of business in Portland,

---

CERTIFICATE OF SERVICE – 2

Oregon (hereinafter "Catalinbread"). Plaintiff creates a variety of guitar pedals using innovative engineering and design techniques, which it sells across the United States and internationally.

3.      Defendant Scott Miller ("Miller") was Catalinbread's Sales Representative and assigned the role of temporary manager of Catalinbread following the untimely passing of the founder and owner, Nicholas Harris ("Harris"). Miller held this role until on or about October 20, 2017 when he resigned after becoming aware that Catalinbread's new owner, Mary Burkett ("Burkett"), mother and heir of Harris' business, had discovered the conspiracy to harm the company.

4.      Defendant Howard Gee ("Gee") was paid to design guitar pedals for Catalinbread until on or about October 20, 2017 when he resigned after becoming aware that Burkett had discovered the conspiracy to harm the company.

5.      Defendant Boris Lutskovsky ("Lutskovsky") was employed to provide information technology and computer support until terminated for cause on or about October 26, 2017.

6.      Defendant Michael Erickson ("Erickson") was employed to provide customer service and artist relations until he resigned on or about October 23, 2017.

## JURISDICTION

7.      This Court has subject matter jurisdiction over federal question claims under the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, pursuant to 28 U.S.C. § 1331.

Cronan Law LLC
4207 Woodstock Blvd #440
Portland, OR 97206
Tel: (503) 482-9210

Additionally, this Court has supplemental jurisdiction over all other claims herein asserted pursuant to 28 U.S.C. § 1367, because all claims rise from the same controversy.

8.     This Court has personal jurisdiction over all parties because they reside in or have their principal place of business or employment in the District of Oregon.

9.     Venue is proper in this Court because the transactions giving rise to this action occurred in the District of Oregon and all parties reside in or have their principal place of business in the District of Oregon. Venue is proper in the Portland Division because the events giving rise to the claim occurred in the counties over which the Portland Division presides.

## FACTS OF THE CASE

10.     Catalinbread was founded in 2003 by Harris as a producer of specialized guitar effects and distortion pedals.

11.     Defendants were employees of Catalinbread prior to the events in this action.

12.     Since its founding, Catalinbread developed a national reputation for producing unusual and innovative pedals, which were used by numerous prominent musicians and are sold across the United States and internationally.

13.     Catalinbread developed and continues to maintain proprietary and confidential information, plans, designs, schematics, programs, lists, and knowhow related to the design, manufacture, sales of its products, as well as valuable and

Cronan Law LLC
4207 Woodstock Blvd #440
Portland, OR 97206
Tel: (503) 482-9210

confidential information regarding the operations of the business. The confidential information includes but is not limited to: Build of Material ("BOM"), specifying exactly which parts are required for each pedal manufactured; Cost of Goods ("COG"), the proprietary list of wholesale cost for each component of the pedals, since Catalinbread's costs necessarily vary from other manufactures because the sources and purchase prices are negotiated confidentially; Schematics, describing the circuit structure and signal flow of the pedals, which are confidential and protected information, especially for new or unreleased pedals, because a competitor would require significant time and effort to reverse engineer them; Product structures, defining the exact measurements and methods for building the pedals; Project files, including the application or program specific files that allow Catalinbread to design and test schematics, product structures, printed circuit boards, program microchips and even the images printed on the pedal itself; and Data files, which are the final exported versions of the project files, used primarily to cut circuit boards, shape enclosures, flash machine code onto microchips, and print graphics on the pedals.

14.    Collectively, all of this information constitutes Catalinbread's valuable trade secrets, its "secret sauce." With this information, a competitor could clone pedals, use pricing information for competitive advantage, build off of Catalinbread's efforts and create derivative products, or take a variety of other harmful actions. Without the trade secrets, a competitor would need to spend significant time and resources to reverse engineer the parts list, the circuit boards,

---

CERTIFICATE OF SERVICE – 5

the signal flow, and the measurements of the enclosures. The machine code on the microchips cannot be deciphered from the programmed chips, forcing the competitor to recreate its own code in an attempt to emulate the functions of the chips on the boards. However, should the competitor have possession the proprietary files, it could simply begin building Catalinbread pedals.

15.    The trade secrets are so important and valuable to Catalinbread that prior to finalizing Harris' probate, Defendant Miller, as acting manager, did not want to share that information with Burkett. In a communication to Harris' probate attorney Miller wrote, "Mary is asking for costed bills-of-material and schematics for all of our pedals. Than information is proprietary as hell, and the fact that she is asking for it is extremely worrisome to me. That data would be of tremendous value to someone like Josh from JHS Pedals . . ."

16.    Catalinbread took reasonable and appropriate steps to secure and protect the trade secrets, including but not limited to: adopting confidentiality policies and procedures in its employee handbook; maintaining a secure computer network, protected by passwords and limiting user accounts to employees with password requirements; and deprovisioning employees who left employment.

17.    Harris died unexpectedly on March 9, 2016, when his vehicle was struck by tree felled in a windstorm. Melissa Palmer, Nicholas' sister, was appointed to administer his estate. Ownership then passed after probate to Nicholas' mother, Mary Burkett. Burkett is currently the sole owner of Catalinbread and remains active in its administration.  Probate closed in or around

Cronan Law LLC
4207 Woodstock Blvd #440
Portland, OR 97206
Tel: (503) 482-9210

June 2017.

18.     After Burkett assumed control of the company in June 2017, production suddenly and without explanation fell significantly below prior levels.

19.     Because Scott Miller was the acting manager, Burkett sought explanations from Miller regarding the drop in production. Burkett requested updates and detailed reports from Miller. Miller ignored or outright refused to comply with the requests.

20.     During this same time period, Defendants were using Catalinbread laptops to communicate privately on the online messaging service Slack. Defendants used Slack to communicate plans to compel Burkett to sell them the company by making it difficult if not impossible to continue operations if she refused.

21.     In the course of this action, Defendants conspired to delete and successfully deleted entire threads of the Slack conversations to prevent discovery by Burkett. Upon information and belief, the communications were deleted after notice of Plaintiff's investigation and their full knowledge of likely litigation.

22.     In or about August 2017, Miller and Gee started insisting that Burkett sell them the company and that Burkett provide financing for the sale.

23.     In or around September 2017, Defendants started taking overt steps towards founding a new company to compete directly against Catalinbread, including removing components for building product, proprietary development parts

Cronan Law LLC
4207 Woodstock Blvd #440
Portland, OR 97206
Tel: (503) 482-9210

and breadboards[1] from Catalinbread with the specific intent of recasting proprietary and unreleased Catalinbread prototypes as competing pedals. Defendants also started making plans to raise funds for their new competing venture. Around this time, Defendants purchased domain names for use with the planned competing company.

24.     Defendants continued to work for Catalinbread as they planned their new competing company, and repeatedly reminded each other to do the "bare minimum" yet "play poker face" while working at Catalinbread so as not to arouse suspicion.  While being paid for company work, Scott Miller scheduled and held meetings with the staff to plan for the new company.

25.     In or around October 2017, as Defendants demonstrated concern that Catalinbread would discover their plans, Defendants accessed Catalinbread's Slack account and Catalinbread's on-site computers and, without authorization, deleted company-owned information that could reveal their plans for their new company. Defendants deleted their own Slack conversations and "channels" created on Catalinbread's Slack account. They deactivated or deleted accounts of current and former employees, including Harris' own legacy account and that of Harris' sister, Melissa Palmer, who were not cooperating and posed a threat of discovery of the conspiracy plans.

26.     In or around October 2017, Gee, going by his known nickname

---

[1] A breadboard is a construction base for guitar pedals and other electronics, generally used for creating prototypes.

CERTIFICATE OF SERVICE – 8

Kittycaster, and Lutskovsky, created a second Slack channel that allowed Defendants to communicate outside of Catalinbread's system.

27.    In or around September and October 2017, Defendants planned a trip to the annual National Association of Music Merchants conference ("NAMM show"), using Catalinbread's funds and resources, in order to raise funds and awareness of their new competing venture. Defendants represented this trip to Catalinbread as a networking trip for Catalinbread's benefit. Defendants expressly planned to buy non-refundable tickets so they would still be able to use arrangements paid for by Catalinbread even if they left the company and went into competition against Catalinbread.

28.    In or around October 2017, Defendants conspired to use and began using Catalinbread's proprietary engineering to develop a line of competing products, while purporting to work on Catalinbread's time and using Catalinbread's resources. Defendants discussed getting the work done "on [Catalinbread] paychecks" so they would not be "burning this money on salaries" of their competing venture. Defendants Gee and Lutskovsky made efforts to work from home as much as possible so they would not be discovered working on their own projects where they would be seen by Catalinbread ownership or other employees.

29.    On or around October 13, 2017, Defendants conspired to coerce Burkett to sell Catalinbread to them or they would cause the company to self-destruct. Defendants expressed through Slack their dual hopes that this plan would lead to them having their own venture, while having Catalinbread as a venture

CERTIFICATE OF SERVICE – 9

"end badly" for Burkett.

30.    On or around October 14, 2017, Defendants took steps to download NAMM show badges and purchase non-refundable tickets using Catalinbread resources for use under their new venture.

31.    On or around October 14, 2017, Defendants resolved to stop producing, but still collect wages from Catalinbread, in order to coerce Catalinbread to either fire them, in which case they would seek unemployment, or sell them the business.

32.    On or around October 16, 2017, Defendants took overt steps to cause Catalinbread to self-destruct, including falsely and without authorization marking supplies as out of stock and downloading protected build of material ("BOM"), cost of goods ("COG") schematics, product structures, files, and other data from Catalinbread computers and making copies for later appropriation.

33.    On or around October 16, 2017, Defendants expressly discussed their plans on Slack to take the proprietary and protected trade secrets:

Lutskovsky: "what would help is getting a list of what info we have and where it is. i don't know where all the schematics are"

Later that day:

Erickson: "To recap: We have Slack, Email, Docs, All BOMs, schematics, measurements, programs, etc What else do we need?"

34.    On or around October 16, 2017, Defendants expressly discussed their plans on Slack to cause significant harm to Catalinbread's reputation with the

intent to lower the company's value. Gee wrote, "Once the world finds out, no dealer would order from cbread anymore, should she be able to resuscitate it. Scott would get the word out. Then the name Catalinbread will be worthless and if we want we'll be able to buy it for $20."

35.     On or around October 16, 2017, Defendants expressly discussed their plans on Slack to destroy or render inaccessible critical and proprietary information:

> Miller: "Might be a good idea to wipe my old MacBook clean. That's got the Deluxe and Pre files as well as all the old shit.  The iMac has the old shit on it but not deluxe and pre. Change the passwords too. Make that asshole really have to work to get any of that info."
>
> Erickson: "Is that the laptop on your desk?"
>
> Miller: Yup. I did a reset, but I'm not sure it completed. It wanted me to sign into the App Store with my Apple ID but I didn't do that."

Later that day:

> Erickson: "@baldo [Miller] can you snag and wipe Bryan's MacBook?"

It is notable that Bryan no longer worked for Catalinbread, thus they accessed and altered data on a computer for which they did not have authority.

36.     On or around October 16, 2017, Defendants expressly discussed their plans on Slack to physically take parts and prototypes from the shop, to keep prototypes developed on company time and with company intellectual property, and to use the prototype breadboards to make their own pedals:

Law LLC

                                                              4207 Woodstock Blvd #440
                                                              Portland, OR 97206
                                                              Tel: (503) 482-9210

Gee: "I have all of the breadboards for stuff I developed. Matthew grabbed a bunch of random dev parts and stuff."

Lutskovsky: "Good"

Gee: "The Belle Dix breadboard will come in handy when we recast it as a new even better pedal."

Lutskovsky: "yep"

37.    On or around October 18, 2017, Burkett made a good faith effort to engage Defendants and offered a way forward that would foster cooperation and protect Catalinbread from further injury.

38.    On or around October 18, 2018, at the same time Burkett was meeting with Catalinbread employees and again immediately following the end of business, Defendants escalated their efforts to pull as much proprietary and secret information from Catalinbread computers as they could, and accelerated work on establishing the competing venture, using Catalinbread resources, before access could be fully denied.

39.    On or around October 18, 2017 and shortly thereafter, upon realizing that their plans had been discovered by Catalinbread, Defendants expressly misrepresented and lied about their actions and the intentions, with the hope of "stringing [Burkett] along" in order to buy more time to convert Catalinbread resources and develop competing products while still being paid by Catalinbread. Defendants falsely informed Burkett that they did not use Slack so that she would

not find their plans. Making good on the plans discussed in Slack, Defendants purged their company phones, deleted information from Catalinbread computers, changed and deleted online passwords, purged Catalinbread laptops, and took Catalinbread property before Miller, Gee and Erickson quit. Lutskovsky was terminated for cause a few days later.

40.     At least as early as October 2017 and ongoing, Defendants continued to design their new competing line of products, built directly off of Catalinbread information and property, while simultaneously initiating a smear campaign against Catalinbread with the express intention that Catalinbread would no longer be able to sell to distributors "should [Burkett] be able to resuscitate" the company. As if to broadcast their intent, Defendants renamed their Slack channel "Catalindead."

41.     Following the end of Defendants' employment with Catalinbread, there was evidence of unusual traffic on the Catalinbread network, including multiple instances where some of the shop computers showed signs that someone had attempted to login to the computer and/or the company network. One of the primary targets was the main shop computer discussed in the Slack threads as a target for deletion.

42.     Based upon the targeted nature of the actions and the express plans discussed among the Defendants, Plaintiff believes the Defendants, in concert, accessed company-protected systems after their actual and legal authority was

CERTIFICATE OF SERVICE – 13

Cronan
Law LLC

4207 Woodstock Blvd #440
Portland, OR 97206
Tel: (503) 482-9210

revoked.

43.     Through Plaintiff's communications with retailers, suppliers and competitors, Plaintiff believes Defendants took substantial steps to form a competing business and use some of the trade secrets they copied and then deleted from Catalinbread computers as well as the physical prototypes of which they retained.

44.     As the direct and proximate result of the intentional, planned and systematic deletion, removal and destruction of company assets, Burkett and Catalinbread were forced to expend significant time and money to restore business operations; the business incurred substantial and near terminal losses in revenue, sales, production, and suffered irreparable damage to its reputation.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### (Misappropriation of Trade Secrets Under the Defend Trade Secrets Act (18 U.S.C. § 1831, *et seq.*))

45.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 44 above, as though set forth fully herein.

46.     Plaintiff owns and possesses aforementioned confidential and proprietary trade secret information, which is financial, scientific, business, economic, technical, or engineering in nature.

47.     Plaintiff has taken reasonable measures to keep said information

CERTIFICATE OF SERVICE – 14
Law LLC

Cronan

4207 Woodstock Blvd #440
Portland, OR 97206
Tel: (503) 482-9210

secret and confidential.

48.    Plaintiff's said information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

49.    Plaintiff's said information relates to the products and services now and in the future used, sold, shipped, and ordered in interstate and foreign commerce.

50.    Upon information and belief, Defendants, individually and in concert, acquired said trade secrets by improper means.

51.    Upon information and belief, Defendants knew or had reason to know that said trade secrets were obtained by improper means.

52.    Upon information and belief, Defendants disclosed or used, or intended to disclose or use, said Plaintiff's trade secrets without the consent of Plaintiff or any other person authorized to consent to use at the time of disclosure or use.

53.    Upon information and belief, Defendant obtained said trade secrets through theft, misrepresentation, breach of duty to remain secrecy, and inducement of breach of duty to remain secrecy.

54.    Upon information and belief, Defendant did not obtain said trade secrets through reverse engineering, independent derivation, or any other lawful means of acquisition.

55.    As a direct and proximate result of Defendants' misappropriation, Plaintiff has been damaged in an amount to be determined at trial, and therefore Plaintiff is entitled to an award of reasonable attorney's fees and costs incurred herein pursuant to 18 U.S.C. § 1836(b)(3)(C).

## SECOND CLAIM FOR RELIEF

### (Misappropriation under Oregon Uniform Trade Secrets Act)

56.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 44 above, as though set forth fully herein.

57.    The Oregon Uniform Trade Secrets Act, O.R.S. § 646.461 *et seq*. ("OUTSA"), allows a party to recover compensatory damages in the form of actual losses stemming from the misappropriation of a trade secret, and the unjust enrichment experienced by the party liable for misappropriation.  In addition, upon a showing of willful or malicious misappropriation, punitive damages may be awarded in an amount not exceeding twice any compensatory damages.

58.    The OUTSA also allows for the temporary, preliminary and permanent enjoinment of actual or threatened misappropriation.

59.    The OUTSA further allows the award of attorney fees and punitive damages upon a finding of willful or malicious misappropriation of a trade secret.

60.    Under the OUTSA, "trade secret" is defined broadly to mean "[i]nformation, including a drawing, cost data, customer list, formula, pattern, compilation, program, device, method, technique or process that:

(a) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

61.    Under the OUTSA, "misappropriation" is defined as:

(a) "Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;

(b) or use of a trade secret of another without express or implied consent by a person who used improper means to acquire knowledge of the trade secret;

(c) Disclosure or use of a trade secret of another without express or implied consent by a person who, before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake; or

(d) Disclosure or use of a trade secret of another without express or implied consent by a person, who at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was:

(A)    Derived from or through a person who had utilized

improper means to acquire it;

(B)    Acquired under circumstances giving rise to a duty to

maintain its secrecy or limit its use; or

(C)    Derived from or through a person who owed a duty to the

person seeking relief to maintain its secrecy or limit its use." O.R.S. §

646.461(2).

62.    Under the OUTSA, "improper means" is defined to include: "theft,

bribery, misrepresentation, breach or inducement of a breach of a duty to maintain

secrecy or espionage through electronic or other means." O.R.S. § 646.461(1).

63.    Plaintiff owns and possesses information aforementioned confidential

and proprietary trade secret information.

64.    Plaintiff has taken reasonable efforts under the circumstances to

maintain the secrecy of said information.

65.    Plaintiff's said information derives independent economic value from

not being generally known to the public or to other persons who can obtain economic

value from its disclosure or use.

66.    Upon information and belief, Defendants, individually and in concert,

acquired said trade secrets by improper means.

67.    Upon information and belief, Defendants knew or had reason to know

that said trade secrets were obtained by improper means.

68.    Upon information and belief, Defendants disclosed or used, or intended

to disclose or use, said Plaintiff's trade secrets without the consent of Plaintiff or any other person authorized to consent to use at the time of disclosure or use.

69.    Upon information and belief, Defendant obtained said trade secrets through theft, misrepresentation, breach of duty to remain secrecy, and inducement of breach of duty to remain secrecy, through electronic or other means.

70.    Upon information and belief, Defendant did not obtain said trade secrets through reverse engineering or independent development alone.

71.    Defendants willfully and maliciously acquired and used that information knowing that they were doing so by improper means.

72.    As a results of Defendants' willful and malicious misappropriation of its trade secrets, Plaintiff has suffered damages in an amount to be proven at trial and is entitled to compensatory and punitive damages, pursuant to O.R.S. § 646.465.

73.    Plaintiff also requests that the Court grant permanent injunctive relief against each and every Defendant under O.R.S. § 646.463, enjoining them:

(a) From further access to Plaintiff's data, files, records, information and accounts, including all proprietary prototypes and other forms of intellectual property embodied therein, and the computers on which such items are stored (collectively, "Plaintiff's Protected Information");

(b) From use of Plaintiff's Protected Information;

CERTIFICATE OF SERVICE – 19
Law LLC

Cronan

4207 Woodstock Blvd #440
Portland, OR 97206
Tel: (503) 482-9210

(c) To return all company property, including all copies of Plaintiff's Protected Information;

(d) Pending discovery and final judgment in this action, from deleting or altering in anyway the data, metadata, information, files, records and documents contained on any company electronic device or computer, or any device in their possession, custody, or control containing data, files, records, information accessed or downloaded from company computers, Slack channels, or cloud computer-based accounts;

(e) Soliciting or initiating contact with any distributors or retailers engaged in the sale or distribution of guitar pedals; and

(f) Owning, managing or being employed by any business engaged in the sale or distribution of guitar pedals.

74.    Plaintiff has and will continue to suffer irreparable harm unless Defendants are so enjoined.  Plaintiff lacks an adequate remedy at law to protect it from this harm and to compensate it for the damages and loss suffered and that it will continue to suffer from Defendants' misappropriation of its trade secrets.  In addition to the irreparable harm that will occur to Plaintiff's ability to effectively compete in the marketplace if its trade secrets and confidential and proprietary information are used by Defendants to compete against it, or otherwise disseminated to Plaintiff's competitors or the general public, Plaintiff will suffer

CERTIFICATE OF SERVICE – 20
Law LLC

Cronan

4207 Woodstock Blvd #440
Portland, OR 97206
Tel: (503) 482-9210

irreparable harm to its ability to maintain the secrecy and confidentiality of its trade secrets and confidential information, and thereby suffer a loss of the right to protect such information as a trade secret and as confidential. If the misappropriated and wrongfully obtained information are not returned, Plaintiff's ability to maintain and protect its secrecy and confidentiality will be compromised if not wholly eviscerated.

75.     Plaintiff is entitled to an award of reasonable attorney's fees and costs incurred herein pursuant to O.R.S. § 646.467.

### THIRD CLAIM FOR RELIEF
### (Violation of Computer Fraud and Abuse Act)

76.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 44 above, as though set forth fully herein.

77.     The Computer Fraud and Abuse Act ("CFAA") is codified at 18 U.S.C. § 1030 *et seq.* The CFAA subjects any person to criminal and civil liability who intentionally or with fraudulent intent accesses a protected computer without authorization or in excess of authorized access, and thereby obtains a thing of value in furtherance of an object of fraud, or causes damages and/or loss.

78.     Plaintiff's computer system is used for sales in interstate commerce and is therefore a "protected computer" under the CFAA. *See* 18 U.S.C. § 1030(e)(2)(B).

79.     Upon information and belief, Defendants, individually and in concert,

---

CERTIFICATE OF SERVICE – 21
Law LLC

Cronan

4207 Woodstock Blvd #440
Portland, OR 97206
Tel: (503) 482-9210

knowingly and intentionally exceeded authorized access to Plaintiff's computer system by login into restricted systems for purposes and activities in violation of company policies and employee authority, including but not limited to copying and deleting protected, confidential and trade secret information, deleting communications, changing passwords and login credentials

80.    Upon information and belief, Defendants, individually and in concert, knowingly and intentionally accessed Plaintiff's computer system after such authorization was revoked by logging into restricted systems for purposes and activities in violation of company policies and employee authority, including but not limited to copying and deleting protected, confidential and trade secret information, deleting communications, and changing passwords and login credentials.

81.    Upon information and belief, Defendants copied and deleted information from Plaintiff's protected computers as a result of unauthorized access.

82.    Upon information and belief, Defendants obtained the access to Plaintiff's computer system through the use of interstate communications.

83.    Plaintiff has a private cause of action under the CFAA pursuant to 18 U.S.C. § 1030(g), which provides that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief" if the conduct "involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V)" of Section 1030(c)(4)(A)(i).

CERTIFICATE OF SERVICE – 22
Law LLC

Cronan

4207 Woodstock Blvd #440
Portland, OR 97206
Tel: (503) 482-9210

84.    Under 18 U.S.C. § 1030(a)(4)(A)(i)(I), a civil action may be maintained upon a showing of a "loss to 1 or more persons during any 1-year period … aggregating at least $5,000 in value."

85.    Upon information and belief, Defendants also knowingly and with the intent to defraud Plaintiffs, accessed the protected computer and obtained information with a value in excess of $5,000.

86.    Plaintiff requests that the Court grant temporary, preliminary, and permanent injunctions against each Defendant under 18 U.S.C. § 1030(g), enjoining them:

(a) From further access to Plaintiff's Protected Information;

(b) From use of Plaintiff's Protected Information;

(c) To return all company property, including all copies of Plaintiff's Protected Information; and

(d) Pending discovery and final judgment in this action, from deleting or altering in anyway the data, metadata, information, files, records and documents contained on any company electronic device or computer, or any device in their possession, custody, or control containing data, files, records, information accessed or downloaded from company computers, Slack channels, or cloud computer-based accounts;

(e) Soliciting or initiating contact with any distributors or retailers

CERTIFICATE OF SERVICE – 23
Law LLC

Cronan

4207 Woodstock Blvd #440
Portland, OR 97206
Tel: (503) 482-9210

engaged in the sale or distribution of guitar pedals; and

(f) Owning, managing or being employed by any business engaged in the sale or distribution of guitar pedals.

87.    Plaintiff has and will continue to suffer irreparable harm unless Defendants are so enjoined.  Plaintiff lacks an adequate remedy at law to protect it from this harm and to compensate it for the damages and loss suffered and that it will continue to suffer.

## FOURTH CLAIM FOR RELIEF
## (Fraud and Conspiracy to Commit Fraud)

88.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 44 above, as though set forth fully herein.

89.    Upon information and belief, Defendants, individually and in concert, knowingly made false representations of material facts to Plaintiff, including, but not limited to their assertions that Defendants were continuing to work on behalf of Catalinbread, when in fact they were actively planning to compete against Catalinbread and destroy its value.

90.    Upon information and belief, Defendants intended that Plaintiff act on false representations in a manner reasonably contemplated.

91.    Plaintiff was not aware of the falsity of Defendant's representation.

92.    Plaintiff rightfully and reasonably relied on the truth of Defendant's representation by continuing to employ each of them until Plaintiff ultimately

uncovered the truth about their plans.

93.     Plaintiff suffered injuries as the actual and proximate result of Defendant's false representation.

94.     Upon information and belief, Defendants had a meeting of the minds on the object and course of action in one or more unlawful overt acts in furtherance of said fraud.

95.     As a direct and proximate result of Defendants' actions, Plaintiff has been damaged in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF
### (Intentional Interference with Business Relations)

96.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 44 above, as though set forth fully herein.

97.     Plaintiff has a valid business relationship with distributors, retailers and consumers.

98.     Upon information and belief, Defendants, individually and in concert, intentionally interfered with said relationship.

99.     At the time of interference, Defendants were no longer associated with Plaintiff and were therefore a third party.

100.     Upon information and belief, Defendants' interference was accomplished through improper means and for an improper purpose.

101.     Upon information and belief, Plaintiff suffered damage to economic

relations with distributors, retailers and consumers as an actual and proximate result of Defendants' interference in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF
### (Breach of Contract)

102.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 44 above, as though set forth fully herein.

103.    Defendants were paid for contracted services pursuant to written and oral agreements effective through resignation or termination in or about October 2017.

104.    Defendants breached the agreement by failing to perform the contracted services.

105.    As a direct and proximate result of Defendants' breach, Plaintiff has been damaged in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
### (Trespass to Chattels)

106.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 44 above, as though set forth fully herein.

107.    Upon information and belief, Defendants, individually, and in concert, intentionally exercised dominion and control of Plaintiff's tangible and intangible property, including intellectual property.

108.    In exercising dominion and control of Plaintiff's property, Defendants

dispossessed Plaintiff of property's value.

109.    Plaintiffs suffered actual injury as the actual and proximate result of Defendants' dominion and control of Plaintiff's property in an amount to be determined at trial.

## EIGHTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty)

110.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 44 above, as though set forth fully herein.

111.    Each Defendant, while they were Plaintiff's employees, trusted with access to confidential and proprietary information, owed to Plaintiff fiduciary duties, including, but not limited to the duties of undivided loyalty, utmost good faith, full, fair and frank disclosure, and fair dealing.

112.    Each Defendant breached his fiduciary duties to Plaintiff as specifically set forth in the above-stated allegations, and including, but not limited to:

(a) Accessing and downloading the company's confidential and proprietary information, data, files, trade secrets, records, and accounts;

(b) Deleting the company's confidential and proprietary information, data, files, trade secrets, records, and accounts from company systems;

(c) Preparing to use confidential information and trade secrets to solicit Plaintiff's clients, solicit the company's employees, and otherwise compete

with Plaintiff after they separated from the company;

(d) Developing competing products with company trade secrets and planning a creating a competing company while on paid company time and with company computer and internet assets; and

(e) Committing other acts, as detailed herein, to the detriment of the company.

113.   As a result of Defendants' breach of their fiduciary duties, Plaintiff has been damaged in an amount to be proven at trial, and is entitled to compensatory and punitive damages.

## DEMAND FOR JURY TRIAL

114.   Plaintiff demands trial by jury on all appropriate claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendants and each of them as follows:

a. For permanent injunctive relief as requested herein, including, but not limited to, enjoining Defendants:

1. From further access to Plaintiff's Protected Information;

2. From use of Plaintiff's Protected Information;

3. To return all company property, including all copies of Plaintiff's Protected Information;

4. Pending discovery and final judgment in this action, from

CERTIFICATE OF SERVICE – 28
Law LLC

Cronan

4207 Woodstock Blvd #440
Portland, OR 97206
Tel: (503) 482-9210

deleting or altering in anyway the data, metadata, information, files, records and documents contained on any company electronic device or computer, or any device in their possession, custody, or control containing data, files, records, information accessed or downloaded from company computers, Slack channels, or cloud computer-based accounts;

5. Soliciting or initiating contact with any distributors or retailers engaged in the sale or distribution of guitar pedals; and

6. Owning, managing or being employed by any business engaged in the sale or distribution of guitar pedals.

b. On Plaintiff's First Claim for Relief (Misappropriation of Trade Secrets, Federal), in an amount to be determined at trial, but for not less than $200,000;

c. On Plaintiff's Second Claim for Relief (Misappropriation of Trade Secrets, State), in an amount to be determined at trial, but for not less than $200,000;

d. On Plaintiff's Third Claim for Relief (Computer Fraud and Abuse Act), in an amount to be determined at trial, but for not less than $200,000;

e. On Plaintiff's Fourth Claim for Relief (Fraud and Conspiracy to Commit

---

CERTIFICATE OF SERVICE – 29
Law LLC

Cronan

4207 Woodstock Blvd #440
Portland, OR 97206
Tel: (503) 482-9210

Fraud), in an amount to be determined at trial, but for not less than $200,000;

f.  On Plaintiff's Fifth Claim for Relief (Intentional Interference with Business Relations), in an amount to be determined at trial, but for not less than $200,000;

g.  On Plaintiff's Sixth Claim for Relief (Breach of Contract), in an amount to be determined at trial, but for not less than $200,000;

h.  On Plaintiff's Seventh Claim for Relief (Trespass to Chattels), in an amount to be determined at trial, but for not less than $200,000;

i.  On Plaintiff's Eighth Claim for Relief (Breach of Fiduciary Duty), in an amount to be determined at trial, but for not less than $200,000;

j.  For Plaintiff's reasonable attorneys' fees, costs, and disbursements incurred herein; and

k.  Such other and further relief as the Court deems just and proper.

Dated: January 25, 2019          /s/ Aaron J. Cronan
                                 Aaron J. Cronan, OSB 082964
                                 Attorney for Plaintiff Catalinbread

CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2019, I have made service of the foregoing First Amended Complaint for Injunctive Relief and Damages on the party/ies listed below in the manner indicated:

Christopher Lundberg
Haglund Kelley LLP
200 SW Market St., Suite 1777
Portland, OR 97201-5771
CLundberg@hk-law.com
Attorneys for the Defendants: Miller, Gee and Lutskovsky

Jon Strided
Meg Houlihan
Tonkon Torp LLP
Legal Assistant
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
jon.stride@tonkon.com
meg.houlihan@tonkon.com
Attorneys for Defendant: Michael Erickson

Email
Electronically via USDC CM/ECF system

Dated: January 25, 2019          /s/ Aaron J. Cronan
                                 Aaron J. Cronan, OSB082964
                                 Attorney for Plaintiff

Cronan Law LLC
4207 Woodstock Blvd #440
Portland, OR 97206
Tel: (503) 482-9210