IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


CATALINBREAD LLC,                              No. 3:18-cv-01795-HZ

               Plaintiff,

    v.

HOWARD GEE, SCOTT MILLER,            OPINION & ORDER
BORIS LUTSKOVSKY, and
MICHAEL ERICKSON,

               Defendants.

Aaron J. Cronan
CRONAN LAW LLC
4207 SE Woodstock Blvd. #440
Portland, OR 97206

     Attorney for Plaintiff

///

///

///


1- OPINION & ORDER

Christopher G. Lundberg
HAGLUND KELLY LLP
200 SW Market St., Suite 1777
Portland, OR 97201

>Attorney for Defendants Howard
>Gee, Scott Miller, Boris Lutskovsky

Megan K. Houlihan
Jon P. Stride
TONKON TORP LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204

>Attorneys for Defendant Michael Erickson

HERNÁNDEZ, District Judge:

Plaintiff Catalinbread LLC alleges that four former employees, Defendants Howard Gee, Scott Miller, Boris Lutskovsky, and Michael Erickson, conspired to misappropriate Plaintiff's intellectual property, tangible property, and protected trade secrets. Plaintiff brings eight claims against Defendants—two pursuant to federal statutes, the Computer Fraud and Abuse Act ("CFAA") and the Defend Trade Secrets Act ("DTSA"); and six based on state statutes or common law. Defendants[1] move to dismiss Plaintiff's complaint. Defendants argue that Plaintiff fails to state a claim under the CFAA or the DTSA, and that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state and common law claims. The Court grants Defendants' motion in part by dismissing the CFAA claim. However, the Court denies the remainder of Defendants' motion and grants Plaintiff leave to amend.

## BACKGROUND

Plaintiff produces "unusual and innovative" guitar pedals which are sold across the United States and internationally. First Am. Compl. ("FAC") ¶ 12. Plaintiff was founded in 2003

---

[1] Defendants Miller, Gee, and Lutskovsky file a motion to dismiss, which defendant Erickson joins. Joinder, ECF 22.

by Nicholas Harris, who passed away unexpectedly on March 9, 2016. FAC ¶¶ 3, 10, 17. Mr. Harris' mother, Mary Burkett, assumed control of the company in June of 2017. FAC ¶¶ 17-18.

Defendants are former employees of Plaintiff. Mr. Miller was Plaintiff's Sales Representative and temporary manager after Mr. Harris passed away. FAC ¶ 3. Mr. Gee designed guitar pedals. FAC ¶ 4. Mr. Lutskovsky provided information technology and computer support. FAC ¶ 5. Mr. Erickson provided customer service and artist relations. FAC ¶ 6.

Plaintiff alleges that it developed and continues to maintain the following proprietary and confidential information:

- Build of Material ("BOM"), specifying exactly which parts are required for each pedal manufactured;

- Cost of Goods ("COG"), the proprietary list of wholesale cost for each component of the pedals, since Plaintiff's costs necessarily vary from other manufacturers because the sources and purchase prices are negotiated confidentially;

- Schematics, describing the circuit structure and signal flow of the pedals, which are confidential and protected information, especially for new or unreleased pedals, because a competitor would require significant time and effort to reverse engineer them;

- Product structures, defining the exact measurements and methods for building the pedals;

- Project files, including the application or program specific files that allow Plaintiff to design and test schematics, product structures, printed circuit boards, program microchips and even the images printed on the pedal itself; and

- Data files, which are the final exported versions of the project files, used primarily to cut circuit boards, shape enclosures, flash machine code onto microchips, and print graphics on the pedals.

FAC ¶ 13. Collectively, this information constitutes Plaintiff's trade secrets. FAC ¶ 14. Plaintiff took steps to secure and protect the trade secrets, including adopting confidentiality policies and procedures in its employee handbook; maintaining a secure computer network, protected by passwords and limiting user accounts to employees with password requirements; and deprovisioning employees who left employment. FAC ¶ 16.

According to Plaintiff, once Ms. Burkett assumed control of the company in June of 2017, production suddenly and without explanation fell significantly below prior levels. FAC ¶ 18. At the same time, Defendants were conspiring to force Ms. Burkett to sell them the company by making it difficult, if not impossible, to continue the operations if she refused. FAC ¶ 20. In approximately August of 2017, Mr. Miller and Mr. Gee began insisting that Ms. Burkett sell them the company and that she provide financing for the sale. FAC ¶ 22.

In approximately September of 2017, Defendants started taking the following steps towards founding a company to compete with Plaintiff:

- Using Plaintiff's laptops to communicate privately on the online messaging service Slack;

- Removing components for building product, including proprietary development parts;

- Making plans to raise money for their competing venture;

- Purchasing domain names for use with the competing company; and

- Continuing to work for Plaintiff while surreptitiously planning their competing company.

FAC ¶¶ 20, 23, 24.

In approximately October of 2017, concerned that Plaintiff would discover their plans, Defendants accessed Plaintiff's Slack account and Plaintiff's on-site computers and, without authorization, deleted information that could reveal their plans for a new company. FAC ¶ 25. At the same time, Mr. Gee and Mr. Lutskovsky created a second Slack channel that allowed Defendants to communicate outside of Plaintiff's system. FAC ¶ 26. Defendants began using Plaintiff's proprietary engineering to develop a line of competing products. FAC ¶ 28. They also initiated a smear campaign against Plaintiff. FAC ¶ 40.

On or about October 13, 2017, Defendants conspired to coerce Ms. Burkett to sell Plaintiff to them or they would cause the company to self-destruct. FAC ¶ 29. The following day,

Defendants resolved to stop producing, in order to coerce Plaintiff to fire them or sell them the business. FAC ¶ 31.

On or about October 16, 2017, Defendants "falsely and without authorization mark[ed] supplies as out of stock and download[ed] protected build of material ("BOM"), cost of goods ("COG") schematics, product structures, files, and other data from Catalinbread computers and ma[de] copies for later appropriation." FAC ¶ 32. They also expressed their plans on Slack to destroy or render inaccessible critical and proprietary information. FAC ¶ 35. Defendants purged their company phones, deleted information from Plaintiff's computers, changed and deleted online passwords, purged Plaintiff's laptops, and took Plaintiff's property. FAC ¶ 39. Then, Mr. Miller, Mr. Gee, and Mr. Erickson quit. FAC ¶ 39. Mr. Lutskovsky was fired a few days later. FAC ¶ 39.

According to Plaintiff, "[f]ollowing the end of Defendants' employment with Plaintiff, there was evidence of unusual traffic on the Catalinbread network, including multiple instances where some of the shop computers showed signs that someone had attempted to login to the computer and/or the company network. One of the primary targets was the main shop computer discussed in the Slack threads as a target for deletion." FAC ¶ 41. Based on the plans discussed over Slack by Defendants as well as the "targeted nature of the actions," Plaintiff believes Defendants "accessed company-protected systems after their actual and legal authority was revoked." FAC ¶ 42.

Plaintiff also alleges that Defendants "took substantial steps to form a competing business and use some of the trade secrets they copied and then deleted from Catalinbread computers as well as the physical prototypes of which they retained." FAC ¶ 43. As to damages, Plaintiff alleges:

> As the direct and proximate result of the intentional, planned and systematic deletion, removal and destruction of company assets, Burkett and Catalinbread were forced to expend significant time and money to restore business operations; the business incurred substantial and near terminal losses in revenue, sales, production, and suffered irreparable damage to its reputation.

FAC ¶ 44.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n, Inc. v. City & Cnty. of S.F.*, 277 F.3d 1114, 1120 (9th Cir. 2002). However, the court need not accept conclusory allegations as truthful. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint, and we do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations.") (internal quotation marks, citation, and alterations omitted). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint must contain "well-pleaded facts" which "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

## DISCUSSION

I. **Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA")**

Defendants argue that Plaintiff fails to state a CFAA claim.[2] The Court agrees.

"The CFAA prohibits a number of different computer crimes, the majority of which involve accessing computers without authorization or in excess of authorization, and then taking specified forbidden actions, ranging from obtaining information to damaging a computer or computer data." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1131 (9th Cir. 2009). While Plaintiff does not identify specific subsections of 18 U.S.C. § 1030 that were violated[3], its allegations fit into two of the crimes established by the CFAA, 18 U.S.C. §§ 1030(a)(2) and (a)(4). Section 1030(a)(2) provides for criminal penalties to be imposed on a person who:

> intentionally accesses a computer **without authorization** or **exceeds authorized access**, and thereby obtains-- . . . (C) information from any protected computer [.]

(emphasis added). Section 1030(a)(4) provides for criminal penalties to be imposed on a person who:

---

[2] Defendants also contend that Plaintiff's allegations fall short of meeting Rule 9(b)'s particularity requirement. Because the Court dismisses Plaintiff's claim under Rule 12(b)(6), it declines to reach Defendants' alternative argument.

[3] When amending its FAC, Plaintiff must cite to the specific part of the statute that it alleges Defendants violated.

7- OPINION & ORDER

>knowingly and with intent to defraud, accesses a protected computer **without authorization,** or **exceeds authorized access,** and by means of such conduct furthers the intended fraud and obtains anything of value . . . .

(emphasis added). While the CFAA is "primarily a criminal statute," *Brekka*, 581 F.3d at 1134, a civil action for a violation of § 1030 may be brought if the conduct involves one of five enumerated factors. 18 U.S.C. § 1030(g). The relevant factor at issue in this case is "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I).

According to Defendants, *Brekka* forecloses Plaintiff's CFAA claim because "the gravamen of plaintiff's CFAA claim is . . . that defendants violated the Act by breaching its employee use restrictions" as opposed to a violation due to accessing Plaintiff's computers without authorization or by exceeding authorized access. Defs.' Mot. Dismiss 8, ECF 21. Plaintiff responds by relying on *United States v. Nosal*, 844 F.3d 1024, 1033 (9th Cir. 2016) ("*Nosal II*") and pointing to allegations in the Complaint that it contends comprise allegations of Defendants both accessing computers without authorization and exceeding authorized access.

*Brekka* involved a former employee who wanted to compete using confidential data from his former company. The plaintiff (LVRC) alleged that its former employee, Brekka, violated the CFAA when Brekka emailed documents to himself and his wife prior to leaving LVRC. *Brekka,* 581 F.3d at 1129. The Ninth Circuit disagreed. Because Brekka was authorized to use LVRC's computers while he was employed at LVRC, the Court held that he did not access a computer "without authorization." *Id.* "In other words, for purposes of the CFAA, when an employer authorizes an employee to use a company computer subject to certain limitations, the employee remains authorized to use the computer even if the employee violates those limitations." *Id.* at 1133. Further, he did not "exceed authorized access" by emailing the documents because he was

entitled to obtain the documents. *Id.* at 1129. However, if Brekka had accessed LCRV's information after LVRC rescinded his right to do so, or after he left the company, then he would have violated the CFAA. *Id.* at 1136.

The Ninth Circuit reiterated its *Brekka* holding seven years later in *Nosal II*, where an employee left his company, had his computer access credentials revoked, yet continued to access the employer's database using the credentials of the employee's former executive assistant. *Nosal II,* 844 F.3d at 1029. The Court stated: "[A] person uses a computer 'without authorization' under [the CFAA] . . . when the employer has rescinded permission to access the computer and the defendant uses the computer anyway." *Id.*

Plaintiff argues that "[t]he basis of the CFAA claim is Plaintiff's allegation that Defendants actually accessed and destroyed content on a computer they certainly did not have any authority to access." Pl.'s Resp. 9, ECF 24. However, Plaintiff cites to only three paragraphs of its FAC to supports its argument:

- On or about October 16, 2017, Defendants expressly discussed their plans on Slack to destroy or render inaccessible critical and proprietary information:

    > Miller: "Might be a good idea to wipe my old MacBook clean. That's got the Deluxe and Pre files as well as all the old shit. The iMac has the old shit on it but not deluxe and pre. Change the passwords too. Make that asshole really have to work to get any of that info."

    > Erickson: "Is that the laptop on your desk?"

    > Miller: "Yup. I did a reset, but I'm not sure it completed. It wanted me to sign into the App Store with my Apple ID but I didn't do that."

    Later that day:

    > Erickson: "@baldo [Miller] can you snag and wipe Bryan's MacBook?"

    It is notable that Bryan no longer worked for Catalinbread, thus they accessed and altered data on a computer for which they did not have authority. FAC ¶ 35.

- Following the end of Defendants' employment with Catalinbread, there was evidence of unusual traffic on the Catalinbread network, including multiple instances where some of the shop computers showed signs that someone had attempted to login to the computer and/or the company network. One of the primary targets was the main shop computer discussed in the Slack threads as a target for deletion. FAC ¶ 41.

- Based upon the targeted nature of the actions and the express plans discussed among the Defendants, Plaintiff believes the Defendants, in concert, accessed company-protected systems after their actual and legal authority was revoked. FAC ¶ 42.

None of these allegations are enough to constitute a violation of the CFAA. To the extent Defendants accessed and altered Plaintiff's computers while they were employed by Plaintiff and Plaintiff had not rescinded its permission, such conduct does not constitute a CFAA violation under *Brekka*.

As to the access of Bryan's computer, the FAC does not allege any facts to support the conclusory statement that Defendants accessed and altered Bryan's computer. The FAC does not make clear that *anyone* accessed and altered Bryan's computer; Plaintiff's Response suggests that Plaintiff does not know. *See* Pl.'s Resp. 8. Nor does the FAC allege that Defendants lacked authority to access Bryan's laptop while they were still employed by Plaintiff.[4] At most, the FAC establishes that two defendants discussed the possibility of accessing and altering Bryan's laptop. That is not a CFAA violation.

The FAC also does not allege that Defendants accessed company-protected systems after their authority was revoked. Instead the FAC alleges that someone *attempted* to access the company network and that Plaintiff believes it was Defendants because they had talked about

---

[4] Plaintiff makes several arguments in its Response that are not supported by any allegation in the FAC. For example, Plaintiff writes, "Erickson had no authority to access this other employee's computer, nor did Miller have the authority to grant such authority to Erickson." Pl.'s Resp. 10-11; "Defendants accessed the Catalinbread network and computers after their employment ended," Pl.'s Resp. 11; and "Lutskovsky was the IT administrator," Pl.'s Resp. 12 n. 2. The FAC does not contain these allegations; therefore, the Court does not consider them in its analysis regarding the adequacy of the pleading.

doing so. Such speculation is not enough to "permit the court to infer more than the mere possibility of misconduct[.]" *Ashcroft*, 556 U.S. at 679.

Finally, the FAC does not allege that Defendants obtained any information, as required by § 1030(a)(2) or that they furthered their intended fraud or obtained anything of value, in an aggregate of at least $5,000, as required by § 1030(a)(4). For all the reasons above, Plaintiff's allegations fail to state a CFAA claim.

## II. Defend Trade Secrets Act, 18 U.S.C. § 1836

Defendants move to dismiss Plaintiff's DTSA claim.[5] Because Plaintiff's allegations are adequate to state a claim, the Court denies Defendants' motion.

"Enacted in May 2016, the [DTSA] provides a federal cause of action to owners of trade secrets that are misappropriated where the trade secrets are related to products used in interstate commerce." *Gluten Free Baking Co. LLC v. Canyon Bakehouse Holdings, LLC*, No. 3:17-CV-00146-MO, 2018 WL 2105375, at *2 (D. Or. May 7, 2018). The term trade secret means:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

---

[5] Plaintiff's complaint cites 18 U.S.C. § 1831. The Court assumes Plaintiff intended to bring a claim under 18 U.S.C. § 1836, which is the section that provides for civil proceedings. Similarly, the Court disregards arguments Plaintiff makes pursuant to § 1832, a criminal statute, and instead applies the law of the DTSA that applies to civil actions only. When amending Plaintiff's FAC, Plaintiff must ensure that it cites to the proper statute.

11- OPINION & ORDER

18 U.S.C. § 1839. In other words, "[a] trade secret is information that the owner has taken reasonable measures to keep secret and that derives independent value from not being generally known to others." *Gluten Free Baking Co. LLC*, 2018 WL 2105375, at *2. "Misappropriation" consists of (a) "acquisition of a trade secret" by a person who knows or should know the secret was improperly acquired or (b) "disclosure or use of a trade secret of another without express or implied consent." 18 U.S.C. § 1839(5)(A)(B); *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-CV-02177-SI, 2017 WL 1436044, at *3 (N.D. Cal. Apr. 24, 2017). "Thus, the Act's text contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use." *Cave Consulting Grp., Inc.,* 2017 WL 1436044, at * 3. "To survive a motion to dismiss a trade secret misappropriation claim, the plaintiff must allege facts that plausibly support the claim that the defendant 'acquired the trade secrets by one of the improper means listed [under the statute].'" *Select Timber Prods. LLC v. Resch*, No. 3:17-cv-00541-HZ, 2017 WL 3709066, at *3 (D. Or. Aug. 27, 2017) (citing *AccentCare Home Health of Rogue Valley, LLC v. Bliss*, No. 1:16-cv-01393-CL, 2017 U.S. Dist. LEXIS 88125, at *12, 2017 WL 2464436 (D. Or. Apr. 13, 2017)).

Defendants argue that Plaintiff's DTSA claim is deficient in three ways: (1) Plaintiff fails to allege what trade secrets Defendants misappropriated; (2) the material allegations in support of Plaintiff's DTSA claim are not directed at any of the four named Defendants in particular; and (3) Plaintiff fails to allege how Defendants' alleged DTSA violation caused its injury.

Defendants cite *Space Data Corp. v. X*, No. 16-CV-03260-BLF, 2017 WL 5013363 (N.D. Cal. Feb. 16, 2017). In *Space Data Corp.,* the Court held that "a high-level overview" of purported trade secrets, such as "data on the environment in the stratosphere" was an insufficient description of trade secrets. In addition, the complaint's allegation that "Defendants have engaged in other business activity based on Space Data's confidential trade secret information,

which conflict with their legal obligations to Space Data," *id.* at *2, was a conclusory assertion that did not provide a reasonable basis for the Court to infer that Google improperly used Space Data's trade secrets. *Id.*

The FAC in this case is distinguishable in two key ways. First, Defendants concede that Plaintiff describes its trade secrets "in fair detail" and the Court agrees. Defs.' Reply 7, ECF 25; FAC ¶¶ 13, 14. Therefore, the description of Plaintiff's trade secrets is not at issue. Second, Plaintiff's allegations of Defendants' acquisition and use of the trade secrets is far more detailed than in *Space Data.* After describing its proprietary and confidential information, FAC ¶ 13, Plaintiff alleges that Defendants misappropriated this information in the following ways:

- In October 2017, Defendants conspired to use and began using Plaintiff's proprietary engineering to develop a line of competing products. FAC ¶ 28.

- On October 16, 2017, Mr. Erickson provided to Mr. Lutskovsky a list of the propriety information they had already taken, including "Slack, Email, Docs, All BOMs, schematics, measurements, programs, etc[.]" FAC ¶ 33. Mr. Gee told Mr. Lutskovsky that he had taken breadboards. FAC ¶ 36.

- On October 18, 2017, Defendants "escalated their efforts to pull as much proprietary and secret information" as they could from Plaintiff's computers. FAC ¶ 38.

- Defendants designed a competing line of products built off Plaintiff's information and property. FAC ¶ 40.

- Defendants copied and deleted Plaintiff's trade secrets and retained some of Plaintiff's physical prototypes. FAC ¶ 43.

Taking these factual allegations as true, as well as all reasonable inferences that may be drawn from such allegations, the Court finds that Plaintiff has raised a "right to relief above the speculative level." *Twombly*, 550 U.S. at 555. As the case proceeds, Plaintiff will have to produce evidence to support these allegations as to each Defendant. However, at this stage of the proceeding, Plaintiff's allegations are adequate.

Finally, Plaintiff's allegation of injury is also adequate. Plaintiff must allege that Defendants' acquisition, disclosure, or use of Plaintiff's trade secret caused an injury. *See Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (plaintiff must allege "defendant's actions damaged the plaintiff"); *Space Data Corp.*, 2017 WL 5013363, at *1 (same). Plaintiff alleges that due to Defendants' deletion, removal, and destruction of company assets (which would include trade secrets), Plaintiff was "forced to expend significant time and money to restore business operations; the business incurred substantial and near terminal losses in revenue, sales, production, and suffered irreparable damage to its reputation." FAC ¶ 44. Plaintiff seeks $200,000 in damages for the DTSA claim. *Id.* at ¶ 114(b).

The allegations are enough to link Defendants' acquisition and use of the trade secrets to Plaintiff's injury. *See, e.g., Rockwell Collins, Inc. v. Wallace*, No. SACV1701369AGJCGX, 2017 WL 5502775, at *3 (C.D. Cal. Nov. 10, 2017) (finding allegation of damage sufficient to withstand motion to dismiss where plaintiff alleged it had to investigate to determine what proprietary information was taken). Therefore, the Court denies Defendants' motion to dismiss the DTSA claim.[6]

## III. Injunctive Relief

In the alternative to their motion to dismiss the DTSA claim, Defendants move to strike Plaintiff's prayer for injunctive relief because it is contrary to public policy and contradicts the plain language of the DTSA. While Defendants may correctly forecast the Court's unwillingness to impose an injunction of the breadth requested by Plaintiff, it would be premature to issue such a ruling at this time. Furthermore, Defendants do not explain how their motion meets the

---

[6] While Defendants generally argue that the DTSA claim also must be dismissed pursuant to Rules 8(a) and 9(b), they make no specific arguments regarding how the Court's analysis would reach a different result than it does under Rule 12(b)(6). Therefore, the Court finds that the DTSA claim withstands all of Defendants' challenges to the adequacy of the pleading.

requirements of Rule 12(f), which allows the Court to strike from a pleading any "redundant, impertinent, or scandalous matter."

Plaintiff responds that it does not seek an injunction under the DTSA. *See* Pl.'s Resp. 18. Therefore, the Court denies Defendants' motion to strike but directs Plaintiff, when amending its complaint, to make clear in the prayer that it does not seek an injunction in connection with its DTSA claim.

## IV. Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that a trial court shall grant leave to amend freely "when justice so requires." "[A] district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States,* 58 F.3d 494, 497 (9th Cir. 1995). Because there are facts that could cure the FAC's deficiencies, the Court grants Plaintiff leave to amend the Complaint.

## CONCLUSION

Defendants' motion to dismiss [21] is granted in part and denied in part. Plaintiff is granted leave to amend the FAC, consistent with the direction provided in this Opinion, within 14 days of the date below. If Plaintiff does not file an amended complaint within 14 days of the date below, this case will be dismissed without further notice.

IT IS SO ORDERED.

Dated this \_\_12\_\_ day of \_\_April\_\_, 2019.

_____
MARCO A. HERNÁNDEZ
United States District Judge